T. J. EWING, JR. ET AL., INDEPENDENT EXECUTORS AND TRUSTEES
OF GEORGE H. HERMANN, DECEASED, V. WM. L. FOLEY, INC.

No. 3782. Decided February 10, 1926.

(280 S. W., 499.)

1.—Executors—Trustees—Liability for Tort.

Executors who, under authority given by the will, erected a building
for the estate were acting in the capacity of trustees. The question of their
personal liability and of that of the trust estate for a tort (injury to the
property of an abutting owner by negligence of their agents in such con-
truction) was controlled by the law governing trustees and trust estates.
(P. 227.)

2.—Same.

When a tort is committed without personal wrong or default by the

trustees, but by the negligence of their agents in the performance of work for the benefit of the trust estate, the estate may be held to respond in damages, and suit therefor may be maintained against the trustees in their capacity as such.   (P. 228.)

### 3.—Trustees—Selection of Agents.

A trustee, where necessary, may employ agents to perform duties for the estate which he can not be expected to discharge personally, and is chargeable with care in their selection.   But, where not in default in this respect he is not personally responsible for their torts nor the estate immune.   He is entitled to immunity from the estate for whose benefit the work was done for any recovery against him for such wrong committed by his agent.   (Pp. 228-234.)

### 4.—Trustee—Trust Estate—Liability for Injury—Form of Action.

The trust estate being liable to indemnify the trustee for the damages recovered for the injury, the injured party could proceed directly against the estate by bringing his action against the trustee in his capacity as representative of the estate.   (Pp. 228-234.)

### 5.—Damages—Interest—Verdict—Special Issues.

In an action for damages by injury to a business building, including loss of business during repairs and impairment of the good will, the court submitted special issues, including damages caused at the time, but not including interest thereon, for which plaintiff had prayed.   Held that, plaintiff having a legal right to recover such interest as an element of his damages under the facts found, the court properly added to the judgment legal interest on the amount of damages awarded by the jury from the date of injury to the date of judgment.   Southern G. & G. Eng. Co. v. Adams & Peters, 227 S. W., 945, and St. Louis S. W. Ry Co. v. Seale and Jones, 267 S. W., 676, distinguished.   (Pp. 234-238.)

Error to the Court of Civil Appeals for the First District, in an appeal from Harris County.

The Wm. L. Foley Co., Inc., sued Ewing, Stettergast and Stewart, as independent executors and trustees and recovered judgment.   Defendants appealed and the judgment was reformed and affirmed (239 S. W., 251), whereupon both appellants and appellee obtained writ of error.

*J. W. Lockett,* for plaintiffs in error, Ewing et al., Independent Executors, etc.

The estate of a deceased person is not liable for damages caused by the tort of the executor of his will, or trustee of his estate, or by the tort of the agents, servants or employees of such executor or trustee.   Able v. Chandler, 12 Texas, 92;  11 R. C. L., Sec. 184;  24 Corpus Juris, 128, Sec. 592N;  Brown v. Floyd, 163 Ala., 317;  Hunnicutt v. Higginbotham, 100 Am. St. Rep., 45;  Nickals v. Stanley, 146 Calif., 724;  Toner v. Muess-

dorffer, 123 Calif., 462; Sterrett v. Barker, 119 Calif., 492; Grimes v. Barndollar, 58 Colo., 421; Carr v. Tate, 107 Ga., 237; Anderson v. Foster, 105 Ga., 563; Hundley v. Pendleton, 70 S. E., 1115; Kalua v. Camarinos, 11 Hawaii, 557; Chaney v. Wood, 115 N. E., 333; Moore v. Moore, 155 Ind., 261; Evans v. Hardy, 76 Ind., 527; Rose v. Cash, 58 Ind., 278; Herd v. Herd, 71 Iowa, 497; Natl. Co-op. Burial Assn. v. Aul's Admr., 156 Ky., 750; Loque v. Succession of Saloy, 45 La. Ann., 1386; Goulding v. Horbury, 85 Me., 227; Plimpton v. Richards, 59 Me., 115; Gridley v. Balston, Quincy (Mass.), 65; Bannigan v. Woodbury, 158 Mich., 206; Fonte v. Horton, 36 Miss., 350; Horn Trunk Co. v. Delano, 162 Mo. App., 402; Van Slooten v. Dodge, 145 N. Y., 327; Reimers v. Schmitt, 74 N. Y. Supp., 122; McCue v. Finck, 20 Misc. (N. Y.) 506; Gillick v. Jackson, 40 Misc. (N. Y.), 627; Helling v. Boss, 121 N. Y. Supp., 1013; Donohue v. Kendall, 50 N. Y. Super. Ct., 386; Gatti-McQuade Co. v. Flynn, 140 N. Y. Supp., 135; Whisnant v. Price, 175 N. C., 611; Deschler v. Franklin, 20 Ohio C. C., 56; Fetting v. Winch, 54 Ore., 600; Fredenberg v. Horn, 218 Pac., 939; In re Moulson's Est., 1 Brewster (Pa.), 296; Parmenter v. Barstow, 63 L. R. A., 227; Elmore v. Elmore, 58 C. C., 289; Coutlett v. U. S. Mortg. Co., 94 Texas, 164; Thompson v. Canterbury, 12 Fed., 485; Belvin v. French, 84 Va., 81.

The estate of the donor of a charity fund ought not to be held liable for damages for anybody's negligence, unless it be the negligence of such donor. By paragraph IX of the will Mr. Hermann devised his estate for the purpose of constructing, operating and maintaining a charity hospital. There was no allegation that Mr. Hermann was negligent, nor that he selected incompetent executors, nor that the executors selected an incompetent architect, nor that the architect selected incompetent workmen. The District Court directed the judgment to be paid out of the estate of Geo. H. Hermann, deceased. The whole estate is an endowment fund of the charity institution. I cite the following cases, all of which have some bearing on my proposition, and some of which fully sustain it: St. Paul's San. v. Williamson, 164 S. W., 36; Armendarez v. Hotel Dieu, 145 S. W., 1030, 167 S. W., 181, 210 S. W., 518; Ry. Co. v. Hanway, 57 S. W., 695; So. Pac. v. Mauldin, 46 S. W., 650; Williamson v. Louisville Ind. School, 95 Ky., 251, 23 L. R. A., 200; Parmenter v. Barstow, 22 R. I., 245, 63 L. R. A. 227; Duncan v. Nebraska Sanitarium, 92 Neb., 162, 30 Ann. Cas., 1127; Parks v. N. W. Univ., 218 Ill., 381, 4 Ann. Cas., 103; Farrigan v. Pevear, 7 L.

R. A. (N. S.), 481; Fire Ins. Patrol v. Boyd, 1 L. R. A., 417; Gillick v. Jackson, 83 N. Y. Supp., 29; Whittaker v. St. Luke's Hosp., 117 S. W., 1198; Basabo v. Salvation Army, 42 L. R. A. (N. S.), 1144; Thornton v. Franklin Square House, 22 L. R. A. (N. S.), 486.

I submit the following authorities as showing that the plaintiff was not entitled to interest from the date of the injury to date of judgment in addition to the amount found by the jury as plaintiff's loss: R. S. Art. 1985, enacted June 18, 1897; Morriss v. Hess, 231 S. W., 317; So. G. & G. E. Co. v. Adams & Peters, 227 S. W., 945; H. & T. C. Ry. v. Lewis, 185 S. W., 593; Baker v. Smelser, 88 Texas, 26; Moose v. M. K. & T. Ry., 180 S. W., 225; Pecos & N. T. Ry. v. Rayzor, 172 S. W., 1105; S. A. & A. P. Ry. Co. v. Schaeffer, 179 S. W., 540; St. L. S. S. Ry. v. Post, 220 S. W., 129; Schaff v. Lynn, 238 S. W., 1034; McDaniel v. Natl. Steam Laundry Co. 244 S. W., 135.

*Pressley K. Ewing* and *Ewing Werlein,* for defendant in error, Wm. L. Foley, Inc.

The Court of Civil Appeals erred in reforming the judgment of the District Court so as to disallow the interest of $4,319 as part of the damage, on account of the jury not having returned a finding of it; for that such holding is without any foundation, since the jury in its proper function on special issues is required to find only disputed questions of fact, all others to be presumed in favor of the judgment, and the jury in the instant case did not find damage as a legal result, but only the disputed facts in that regard, from which the court, in its function, aided by other undisputed facts or facts found by it, would pronounce the damage as it did. Watkins v. Junker, 90 Texas, 584; Railway Co. v. Tankersley, 63 Texas, 57; Railway Co. v. Holliday, 65 Texas, 520; Railway Co. v. Greathouse, 82 Texas, 104; Stahlman v. Riordan, 227 S. W., 726; Ft. Worth & D. C. Ry. Co. v. Smithers, 228 S. W., 637; Cobb v. Robertson, 99 Texas, 144; Steger v. Barrett, 124 S. W., 175; San Antonio & A. P. Ry. Co. v. Sutherland, 199 S. W., 521; Hancock v. Haile, 171 S. W., 1053; Texas & P. Ry. Co. v. Erwin, 180 S. W., 662; City of San Antonio v. Pfeiffer, 216 S. W., 207.

Whatever may have been the early common law rules under ecclesiastical administration on dead men, reaching out for church benefits, as to non-liability on the estate of an executor or trustee for torts, or as against a charity, such rules can have no application to the liability here adjudged under the facts of this case, where independent executors and trustees held in their

ownership or absolute control and charge millions of dollars worth of property of every kind, to be dealt with under the complexities and dangers of modern business, with no relation to charity except for net revenue purposes after deducting all expenses of investment and operation, and where, in wrongfully injuring a neighbor's adjoining property, they did so as incidental to the construction of an eight-story concrete building (expressly authorized under the will at their discretion), at an outlay of several hundred thousand dollars, to be used for net revenue purposes only, after deduction of the costs and expenses incident to such construction, and with no other relation to charity.

A fortiori is the first proposition true, where the executors and trustees committed the wrong through their agents and servants, without individual fault of themselves, and where, being held individually, they would be entitled to reimbursement out of the estate, so that to avoid circuity, it was competent, as done by the judgment, to primarily impose liability upon the property of the estate, used or destined for revenue purposes only, to be enforced by execution and levy in the usual manner. Const. Bill of Rights, Art. 1, Sec. 13; Rev. Stats., Arts. 5942, 5493, 2005; Hotel Dieu v. Armendarez, 210 S. W., 518; Hewett v. Woman's Hospital Aid Assn., 73 N. H., 566; Bruce v. Central Meth. Epis. Church, 147 Mich., 230; Hordern v. Salvation Army, 199 N. Y., 233; Church of Ascension v. Buckhart, 3 Hill, N. Y., 193; Kellogg v. Church Charity Foundation, 128 App. Div., (N. Y.), 214; Gamble v. Vanderbilt University, 200 S. W., 510; 39 Cyc., 302; Powers v. Mass. Homeop. Hospital, 109 Fed., 301; Bennett v. Windham, 4 De J. F. & J. 259.

MR. JUSTICE PIERSON delivered the opinion of the court.

The following will be a sufficient statement of the case for the purposes of this opinion.

T. J. Ewing, Jr., J. J. Settergast, Jr., and John S. Stewart, Independent Executors and Trustees of the estate of George H. Hermann, deceased, plaintiffs in error, as they were authorized to do under the will, through their agents, constructed an eight-story concrete building in the City of Houston next to and abutting the property of Wm. L. Foley, Inc., who were, and for many years prior thereto had been, conducting a dry goods business.

In excavating for the foundation of the Hermann building, the agents of plaintiffs in error, negligently undermined the Foley building, causing the northeast wall of the latter building to

crack and fall, necessitating that it be rebuilt, which was done during the months of August, September, October, November, and December, 1916.

Wm. L. Foley, Inc., brought this suit against T. J. Ewing, Jr., J. J. Settergast, Jr., and John S. Stewart, in their capacities as independent executors and trustees, under the will of George H. Hermann, deceased, to recover damages for loss of profits during the time the wall was being rebuilt and for injury to the "good will" of the business. A judgment in favor of defendant in error for $17,500.00 loss of profits in its business during the five months mentioned caused by the condition of its building and the confusion and demoralization incident thereto, and for $1,000.00 injury to the "good will" was sustained by the Honorable Court of Civil Appeals for the First District. Plaintiffs in error had acted in good faith and were guilty of no personal negligence or individual fault in the selection of their agents, or in the matters complained of. For a more comprehensive and detailed statement of the case see the opinion of the Honorable Court of Civil Appeals in 239 S. W., 251.

As stated, Wm. L. Foley, Inc., brought its suit against plaintiffs in error in their capacities as independent executors and trustees. It is the insistence of plaintiffs in error that an executor or administrator, as such and in his representative capacity, cannot commit a tort or wrongful or unauthorized act; that if such act is committed it is a personal act on the part of such executor or administrator and one for which he may be held liable in damages personally, but that the estate under administration cannot be held liable therefor; that an executor or administrator, *as such,* cannot commit a tort. They cite as unqualifiedly supporting this rule the Common Law of England, which, by statute, has been adopted as the rule of decision in this State, the decisions of the courts of many of the States of the Union, text writers and digests.

In the management of the estate, and especially in respect to the building of the eight-story office building in the City of Houston, it is apparent that plaintiffs in error were acting more particularly in the capacity of trustees, and the rules of law controlling the acts of trustees and the liability of the trust estate for their acts is applicable. Shouler on Wills, Executors and Administrators, Vol. 1, Sections 608, 609, Vol. 2, Section 1248; Perry on Trusts (5th Ed.), Vol. 1, Section 263; 39 Cyc., 249, and cases cited; Ferrier v. Trepannier, 24 Canada Supreme Court Reports, 86; Yerkes v. Richards, 170 Penn. St., 353.

Under the circumstances here narrated, is the trust estate liable in damages for the negligence of the agent of the trustees? May the injured party proceed directly against the property of the trust estate in a suit against the trustees in their representative capacity?

We have recognized that these are important issues. That was reflected in granting a writ of error with the notation, "granted upon the importance of the question." Realizing that the main issue in the case is one of first impression in this State and of far reaching and of grave importance, the writer has made extensive research in the Common Law of England— which by statute is the rule of decision in the case in this State— and in the decisions of the American States. We have concluded that in such a case the correct and just rule is that the estate should be held to respond, and that suit may be maintained against the trustees, as such. While the courts of most of the. American States hold a contrary doctrine, yet it seems to us that this is the just and equitable rule. It certainly is supported by the common law, as will be set out herein, by some of the most distinguished courts of the States, and, we think, by the better reasoning.

A trustee, where it is necessary to do so, may appoint or employ agents or skilled persons to do and perform duties or services in matters in which he cannot be expected to be experienced. As a general rule one accepting the duties and responsibilities of a trustee is charged at all events with the use of ordinary care and prudence in administering the trust. Underhill on Trusts and Trustees, pages 299, 300, 426; Perry on Trusts and Trustees (6th Ed.), Vol. 2, Sec. 914; 39 Cyc., 295. But when such is the case and the trustee has exercised care and prudence in selecting agents necessary for the performance of the duties incumbent upon him, as in this case the construction and erection of a modern office building, and has acted in good faith and has been guilty of no personal negligence or individual fault, it would be a harsh and most unjust rule that would hold the trust estate free from liability and would hold him personally liable for damages for the torts of such agent with no right of indemnity or reimbursement out of such estate. It would hold immune the estate, for the benefit of which the work was properly undertaken, and in many instances would wholly defeat recovery for the injury done where the trustee or trustees were insolvent or without funds.

For the law controlling the liabilities of the trustees under

the facts of this case we will look to the common law of England as announced by the Chancery Courts of England and other authorities.

A parallel case is the case of Benett v. Wyndham, 4 De G. F. & J., 258, 45 English Reports Full Reprint, 1183 (1862.) Omitting discussion of other issues, we quote the following from that case, which discloses the facts and the principles of law applicable here, to-wit:

"This was an appeal from an order of the Master of the Rolls dismissing a petition.

"The testator in the cause devised his residuary real estate to trustees upon trust by and out of the rents, issues and profits thereof to pay two annuities, and by the same ways and means, or by such other ways and means (except a sale or sales) as they might think proper, to levy and raise such sum or sums of money as should be sufficient, with his residuary personal estate, to pay off the incumbrances on his estates. Subject to the above trust, he directed his trustees to stand possessed of his residuary real estates upon trust (after an estate which had determined) for the plaintiff for life, with remainder to his first and other sons in tail, with divers remainders over. * * *

"The third point arose as follows: Some timber being wanted for roofing a barn upon the estates, Mr. Fane, who was the resident and managing trustee, marked some oaks to be felled for the purpose, and gave orders to the bailiff to have them felled. The bailiff sent for that purpose the woodcutters who were usually employed upon the estate. One of these trees overhung a deep sunken lane, and, as it fell, a large bough swept into the lane, struck a person of the name of Leaney, a veterinary surgeon, who happened to be passing by, and broke his leg. Leaney made a demand for compensation against the trustees, which they considered exorbitant; and the parties being unable to come to any terms, Leaney brought his action, which was commenced against both trustees and continued against Fane as the survivor. Leaney recovered judgment for 1,200 pounds and costs. This sum the trustee paid, and now sought to be reimbursed out of the estate. The tenant for life concurred in this, but urged that the amount ought to be paid solely out of the rents which were set apart for paying incumbrances, as forming a fund which represented the inheritance.

"The Master of the Rolls dismissed the petition, treating it as doubtful whether any alteration of the scheme could be made on petition, but expressing a clear opinion that the damages

arising from a tort must be borne by the trustee personally, and that the other matters formed no sufficient ground for altering the scheme.

"The petitioners appealed.

" * * * The scheme is framed for the purposes of a will which, as the Master of the Rolls held, gave the trustees a wide discretion. * * * As regards the damages and costs paid to Leaney, the trustee ought not to be held responsible as between him and the estate for an accident taking place in the execution of orders given by him in the discharge of his duty and in respect of which he is in no manner to blame, though as regards third persons he is answerable for the negligence of those whom he employed. Rex v. Commissioners of Tower Hamlets (1 B. & Ad. 232), Hall v. Smith (2 Bing., 156), Attorney General v. Pearson (2 Coll., 581), furnish an analogy in our favor.

"Mr. Farrer, for the remainder-men, contended that there was no authority for allowing a claim of this nature.

"The Lord Justice Knight Bruce. The trustee in this case appears to have meant well, to have acted with due diligence, and to have employed a proper agent to do an act the directing of which to be done was within the due discharge of his duty. The agent makes a mistake, the consequences of which subject the trustee to legal liability to a third party. I am of opinion that this liability ought, as between the trustee and the estate, to be borne by the estate.

"The Lord Justice Turner. I quite agree.

"After some discussion, their Lordships, being of opinion that it was competent to the court to alter the scheme on petition, made an order directing an annual payment of 1,300 pounds to the tenant for life, and ordering the surplus rents to be applied in the first place in repaying to Fane the damages and costs in the action. * * "

This case is cited in Lewin on Trusts, Vol. 2, Section 639, and the author says:

"As it is a rule that the cestui que trust ought to save the trustee harmless from all damages relating to the trust, so within the reason of the rule, where the trustee has honestly and fairly, without any possibility of being a gainer, laid down money by which the cestui que trust is discharged from a loss, or from a plain and great hazard of it, the trustee ought to be repaid. So where a trustee employed a bailiff to fell some trees, and the woodcutter allowed a bough to fall on a passerby, who was injured, and recovered damages from the trustee, it was

held that as the trustee had meant well, had acted with due dili-
gence, and had employed a proper agent to do an act which was
within the sphere of the trustee's duty, and the agent made a
mistake, the trustee was entitled to charge the damages on the
trust estate.   (Benett v. Wyndham.)"

The correct rule as to the liability of the estate and the right
of an injured party to proceed against it is thus stated in the
foot-note to 39 Cyc., 302:

"It is held that where the trustee in the ordinary management
of the estate, either by himself or his agent, does some act
whereby a third person is injured, for which injury the third
person recovers damages against the trustee, the trustee, if he
has acted with due diligence and reasonably, is entitled to be
indemnified out of the trust estate.   (Benett v. Wyndham, 4 De
G. F. & J. 259, 65 Eng. Ch. 200, 45 Eng. Reprint 1183), and that
where this right of indemnity exists, the person recovering judg-
ment may avail himself of it and proceed directly against the
trust estate (In Re Raybould, (1900) 1 Ch. 199, 69 L. J. Ch.
248, 82 L. T. Rep. N. S. 46, 48 Wkly. Rep. 301.   And see Kellogg
v. Church Charity Foundation, 128 N. Y. App. Div. 214, 112
N. Y. Suppl. 566.)"

This ruling, in the case of Benett v. Wyndham, was followed
in the case of In Re Raybould, Raybould v. Turner (1899) 1
Ch. 199.   The surviving trustee and executor of the named
testator, in 1892, commenced working one of the testator's col-
lieries and in so doing let down the surface of the land, injuring
the buildings and machinery of an adjoining owner, Roberts
and Cooper.   The court, through Byrne, J., said:

"This is not an easy case, and it is not made easier by the
state of the evidence, which is somewhat conflicting.

"The first question I have to consider is whether the same
principle ought to be applied to the case of a trustee claiming a
right to indemnity for liability for damages for a tort, as is
applied to the simpler case of claims made against a trustee by
ordinary business creditors, where they have been allowed the
benefit of his right to indemnity, by proving directly against the
assets; the kind of case of which Dowse v. Gorton (1891, A. C.,
190) is a recent illustration.   It has been argued that there is
no authority to justify me in holding that, where damages have
been recovered against a trustee in respect of a tort, the person
so recovering can avail himself of the trustee's right to indem-
nity, and so go direct against the trust estate; but the authority
of Benett v. Wyndham (4 De G. F. & J. 259) goes to show that

if a trustee in the course of the ordinary management of his testator's estate, either by himself or his agent, does some act whereby some third person is injured, and that third person recovers damages against the trustee in an action for tort, the trustee, if he has acted with due diligence and reasonably, is entitled to be indemnified out of his testator's estate. When once a trustee is entitled to be thus indemnified out of his trust estate, I cannot myself see why the person who has recovered judgment against the trustee should not have the benefit of this right to indemnity and go direct against the trust estate or the assets, as the case may be, just as an ordinary creditor of a business carried on by a trustee or executor has been allowed to do, instead of having to go through the double process of suing the trustee, recovering the damages from him, and leaving the trustee to recoup himself out of the trust estate. I have the parties interested in defending the trust estate before me, and I have also the trustee, and he claims indemnity, and, assuming that a proper case for indemnifying him is made out by the evidence, I think his claim should be allowed. * * *

" * * * It follows, therefore, for the reasons already given, that Messrs. Roberts & Cooper are entitled to stand in the trustee's place for the purpose of obtaining this indemnity direct from this testator's estate."

In the volume entitled, "The Laws of England, Being a Complete Statement of the Whole Law of England, by the Right Honorable the Earl of Halsbury, Lord High Chancellor of Great Britain, 1885-86, 1886-92, and 1895-1905, and Other Lawyers," Volume XXVIII, page 157, regarding the rights of trustees to reimbursement and indemnity out of the trust estate we find the following:

"His right extends to calls on shares which he has been obliged to pay and to liabilities incurred by him in properly carrying on a trade or business under the provisions of the instrument creating the trust, and to damages and costs recovered against him as legal owner of the trust estate, where the injury in respect of which they were recovered was not caused by his neglect or default."

Ferrier v. Trepannier, 24 Canada Supreme Court Reports, 86; Miller, Trustee et al. v. Smythe, 92 Ga. 154; Kellogg v. Church Charity Foundation, 128 App. Div., 214, 112 N. Y. Supp., 566; Ireland v. Bowman & Cockrell, 113, S. W., 57, 113 Ky., 153.

In the case of Miller, Trustee, v. Smythe, 92 Ga., 154, the Supreme Court of Georgia said:

" * * * The main contention of the plaintiff in error was,

that a trust estate could not be subjected to damages resulting from the negligence of the trustee, whether the same be regarded as a breach of contract, or as a breach of duty amounting to a tort. * * *

"The real question, therefore, is: Can the trust estate in the present case be made liable for damages occasioned by the failure of the trustee to repair and put in safe condition the shelving in the store rented to the plaintiff?

" * * * There can be no doubt that Mr. Miller, as trustee, had authority to rent the premises to the plaintiff. He therefore legally and rightfully, in his capacity as trustee, assumed the relation of landlord; and this being true, it is to our minds, a plain proposition, both of law and of justice, that he was bound to perform the duty, enjoined by statute upon all landlords, of keeping the premises in repair, and especially so when he expressly undertook by agreement with his tenant so to do. It follows necessarily that he is, in his representative capacity, liable to the plaintiff for a violation of this duty and of the contract he made in pursuance thereof. And this is right; because the trust estate obtained the benefit of the contract made by the trustee, and should, as to the tenant, bear whatever burden the law imposes upon landlords. As to the ultimate liability, if any, of the trustee to the cestui que trust for his failure to perform his duty in the respect indicated, we are not now called upon to determine. We simply hold that if the plaintiff supports by evidence the allegations of her declaration, she is entitled to a judgment subjecting the trust estate to whatever damages she may have sustained.

In Perry on Trusts and Trustees (6th Ed.), Vol. 2, Section 748, page 1239 notes, the author, after quoting a holding by the Federal Court in Powers v. Mass. Homeopathic Hospital, 109 Fed., 294, 47 C. C. A., 122, 65 L. R. A., 372, to the effect that one who accepts the benefits of a charity enters into such relationship to it as to exempt it or its agents from liability for negligence, especially if due care was exercised in selecting such agents, continues and says:

"If this is the true reason for the exemption from liability, it is obvious that the corporation or the trustees may be liable, on the principle of respondent superior, to outsiders or to employees; and two recent cases have so held. Bruce v. Central M. E. Church, 147 Mich., 230; Kellogg v. Church Charity Foundation, 112 N. Y., 566, 128 App. Div. 214. See also Adams v. University Hospital, 122 Mo. App., 675. It has been also held that a charitable corporation must respond in damages to an

adjoining land owner for polluting a stream. Trevett v. Prison Assn., 98 Va. 332."

The Court of Appeals of Kentucky broadly sustained the right of a party injured by the wrongful maintenance of a dam across a small river by the trustee of a deceased person's estate to recover against the estate in a suit against the trustee in his representative capacity. Ireland v. Bowman & Cockrell, 113 S. W., 56, 130 Ky., 153, 17 Ann. Cas., 786.

In Kellogg v. Church Charity Foundation, 128 App., Div., 214, 112 N. Y. S. 566, the Supreme Court of New York (Appellate Division) in an opinion by that distinguished Jurist, Judge Gaynor, it was held that the rule that an action does not lie against a trustee of a charitable trust estate in his representative capacity as such trustee under a will, is "purely technical" and that "the courts allow the judgment against him individually for damages to be paid out of the trust funds, if he was free from willful misconduct in the tort." Continuing, Judge Gaynor says: "No rule, therefore, that trust funds may not be used to pay damages for torts in the administration of the trust exists even in the case of ordinary express trusts, let alone in the general trusts of charitable corporations."

Halsbury, Lord High Chancellor of Great Britain, in Volume 28, the Laws of England, etc., supra, after announcing the principle here adhered to, and after referring to the Benett and the Raybould cases, added:

"The party injured has the same right as the trustee against the trust estate."

The principle announced, that the party injured has the same right as the trustee against the trust estate is logical and sound in reason.

The holding that a trustee, in cases where he is not chargeable with personal fault or negligence, may legally be reimbursed out of the trust estate for such damages as may be recovered against him, is in effect a holding that in such cases the trust estate is itself liable for such damages, and since the trust estate is so liable we think our practice allows it to be proceeded against in a suit brought directly against the trustee in his representative capacity.

The District Court allowed interest on the amount of damages found by the jury at the legal rate from the date the cause of action for damages accrued, December 24, 1916, to the date of judgment, November 15, 1920.

Wm. L. Foley, Inc., had pleaded and prayed for such interest. The Honorable Court of Civil Appeals eliminated this item of

interest from the judgment, basing its holding on Southern Gas & Gasoline Engine Company v. Adams & Peters, 227 S. W., 945, by the Commission of Appeals.

We cannot sustain this holding.

The issues of fact were submitted to the jury on special issues. Articles 1982 to 1985, inclusive, Vernon's Complete Texas Statutes, 1920, define and regulate special verdicts and provide for the submission of controverted fact issues to the jury upon special issues. Article 1984 defines a special verdict as one "wherein the jury find the facts only on issues made up and submitted to them under the direction of the court." Article 1985 concludes as follows:

" * * * and it shall be the duty of the court, when it submits a case to the jury upon special issues, to submit all the issues made by the pleading. But the failure to submit any issue shall not be deemed a ground for reversal of the judgment, upon appeal or a writ of error, unless its submission has been requested in writing by the party complaining of the judgment. Upon appeal or writ of error, an issue not submitted and not requested by a party to the cause, shall be deemed as found by the court in such manner as to support the judgment; provided, there be evidence to sustain such a finding."

It is needless to say that it is unnecessary for a trial judge to submit to a jury for their finding, uncontroverted or admitted facts, or conclusions of law. Even *controverted* facts have been held to have been found by the judge in support of the judgment rendered when their submission was not requested by either party, under the provisions of the statute last quoted. Certainly, as is the common practice in the district courts, uncontroverted facts or those ascertainable by legal deductions need not be submitted.

The case of So. Gas & G. E. Co. v. Adams & Peters, 227 S. W., 945, was controlled by the pleadings. In the opinion Judge Spencer says, "the damages claimed in the pleadings must be laid in a sufficient amount to cover the loss at the time of the accrual of the cause of action, and the interest from that date to the time of the trial. S. A. & A. P. Ry. v. Addison, 96 Texas, 61, 70 S. W., 200," and then proceeds to say that the pleadings alleged the loss to be the difference between two amounts; that the court's charge presented to the jury the measure of damage as pleaded (thus limiting the damages to be found and recovered for, to the sum to be found by the jury), and that the defendants in error "did not object to the charge as given, nor did they request a special charge embodying interest as an element of

damage." The charge unobjected to, following the pleadings, undertook to present to the jury the full measure of damages for which recovery might be had. Under such circumstances it was, as Judge Spencer said in concluding his opinion, "the duty of defendants in error to have requested a charge informing the jury to include interest from the date of the accrual of the cause of action up to the time of trial as an element of damage in the event that they found defendants in error had suffered damages, and, not having done so, they waived their right thereto."

The portion of Judge Spencer's opinion last referred to was quoted by Judge Powell in St. Louis Southwestern Ry. Co. v. Seale and Jones, 267 S. W., 676 (Commission of Appeals.) In its essential features, Ry. Co. vs. Seale and Jones is parallel to the case of So. Gas and G. E. Co. vs. Adams & Peters, supra. Interest had not been pleaded or prayed for, the court definitely and fully instructed the jury as to the measure of damage, in effect excluding any other damages. Without objection or the tender of a special charge, it is a reasonable conclusion that the jury awarded all the damages the plaintiff had shown himself entitled to under his pleadings, or, in such charge submitted, and that the plaintiff had waived his interest as damages. The disposition of these two cases was correct as adopted by this court. McKenzie v. Withers, 109 Texas, 255, 206 S. W., 503.

A review of the circumstances and procedure of the trial of this case presents quite a different situation. As stated above, the plaintiff below specially pleaded and prayed for interest. The issues of fact presented to the jury for its findings were specific and distinct and could not possibly have been understood by the jury to include interest as damages, and there was and could be no controversy as to the amount of interest, once the specified items of loss were ascertained, nor as to the legal right for its recovery under all the facts of the case.

The court first submitted to the jury the fact issues relating to liability based upon interference with its business during the months of August, September, October, November and to December 24, 1916, while the wall of the building was being rebuilt. As to the extent or amount of the injury the court submitted two simple questions:

"8. If you have found that plaintiff suffered loss of profits or gain in its business, and that such was a proximate result of alleged injury to the Foley building, as submitted in the next preceding issue, then what amount of profit or gain in its business did it so lose? * * *

"You are instructed, in answering this issue, not to consider or take into account lost profits or gain, if any, that you do not find to have proximately resulted from alleged injury to the Foley building during the period from such injury to the restoration of the building; * * * *

"You are further instructed, in answering this issue, to consider and take into account all lost profits or gain, if any, in the plaintiff's business, which you may believe from the evidence to have proximately resulted from alleged injury to the Foley building during the period from such injury to restoration of the building * * * * ."

"10. If plaintiff's business had a good will connected with it, as above submitted, then was such good will of greater value immediately before the alleged injury to the Foley building from the excavations, such as you may find, than it was immediately after restoration of the building from such injury?  Answer 'Yes' or 'No.'

"11. If you have answered the next preceding question in the affirmative, then what was the difference between the value of such good will immediately before the alleged injury to the Foley building such as you may find, and its value immediately after restoration of the building from such injury?  Answer, stating the amount, if any, you find."

In Watkins v. Junker, 90 Texas, 584, 40 S. W., 11, this court, speaking through Mr. Justice Brown, said:

"If interest be properly an element of damages in any case, then it is so as a matter of law.  Whether the case is such that the law makes it applicable is a question of fact for the jury, but whether or not it is to be allowed if the facts exist is a question of law that should not be left to the jury.  We think that it is an inconsistency to say that a right exists which a jury may or may not enforce as they may deem proper, and we believe that practically the courts have come to the proposition that in all cases where the measure of recovery is fixed by the conditions existing at the time that the injury is inflicted, the person entitled to recover has also the right to have compensation for the detention of the money to which he is entitled by reason of the wrong done to him.  It being a legal right to receive compensation for the injury inflicted by detaining that to which the party is entitled, it is the duty of the court to instruct the jury under what state of facts they should allow such compensation. * * *

"It was not error for the court to charge the jury to find interest for Junker upon any sum found to be due to him."

In the instant case the necessary and controverted fact issues were submitted to the jury and found by the jury in favor of defendant in error, and as stated above, it was unnecessary for the trial court to submit the issue of interest to the jury as there were no additional or controverted facts to be found upon which it should be based or calculated, and it was within the province of the court, as a matter of law, to enter judgment for the interest as prayed for.

We do not deem it necessary to discuss other assignments as we find no error in the judgment of the Court of Civil Appeals relating to them.

The judgment of the Court of Civil Appeals is reversed and that of the District Court affirmed.

*Reversed and judgment of District Court affirmed.*