## MILLER et al. v. MILLER. (No. 7060.)*

(Court of Civil Appeals of Texas. Austin. Jan. 26, 1927. On Appellee's Motion for Rehearing. Feb. 24, 1927.)

**1. Liens ⬤⇒4—Husband did not create implied lien to former wife by leaving property on her lands three days beyond time fixed by divorce decree.**

Husband, by removing from lands of former wife her property worth $99.50, and leaving there for three days beyond time fixed by divorce decree for him to vacate the lands a tractor and other property worth $1,762.80, did not create implied lien thereon in her favor.

**2. Contracts ⬤⇒3—"Express contract" arises from oral or written language.**

"Express contract" arises from oral or written language of the parties.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Express Contract.]

**3. Contracts ⬤⇒4—"Implied contract" is presumed from circumstances or conduct of parties.**

An "implied contract" is not expressed in language, but is presumed from acts of parties or from circumstances, which, according to ordinary course of dealing and common understanding, show mutual intent to contract.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Implied Contract.]

**4. Trial ⬤⇒252(12)—In suit for conversion and for possession of chattels, court properly refused charge on implied contract, under evidence not showing intention to agree.**

The court did not err in suit for damages and for possession of chattels in giving charge presenting only question of agreement and in refusing charge on implied contract, where evidence would not warrant inference of intention of parties to agree.

**5. Trial ⬤⇒351(2)—Actual value of use of converted chattels held for jury, in absence of evidence of and request for finding rental value.**

In absence both of evidence sufficient to warrant a finding of rental or market value and of request for such finding, court properly submitted to jury issue of actual value of use of converted chattels, in divorced husband's suit against former wife for conversion.

On Motion for Rehearing.

**6. Judgment ⬤⇒256(7)—Court properly entered judgment for interest on damages, in action submitted on special issues, though jury made no finding of interest.**

In action for damages for conversion and for possession of personal property submitted to jury on special issues, court properly entered judgment for interest on damages awarded, though jury made no finding of interest.

Appeal from District Court, McCulloch County; J. P. Woodward, Judge.

Action by J. T. H. Miller against Harry Miller and Novie Miller for conversion and for possession of personal property, with counterclaim by defendant last named. The personal property was sequestered, but replevied, and later surrendered to plaintiff. From a judgment for plaintiff against defendants and sureties on the replevin bond, defendants appeal. Affirmed.

Dibrell & Snodgrass, of Coleman, for appellants.

Wilkinson & Wilkinson, of Brownwood, for appellee.

McCLENDON, C. J. Suit by appellee against appellants for damages for conversion of certain personal property and for title to and possession of a grain separator, a Fordson, and a truck, and for the value of their use. Appellants claimed a lien upon the property sued for and its pledge to appellant Novie Miller, to secure return or payment of the value of her personal property wrongfully taken by appellee, and she counterclaimed for its value. Appellee sequestered the separator, Fordson, and truck, and appellants replevied them, but later surrendered them to appellee. Trial to jury on special issues, and judgment for appellee against appellants and their replevy bond sureties, as stated below.

The facts pertinent to the appeal, other than those with reference to the jury findings on the value of the use of the sequestered property, follow:

Appellee is the divorced husband of appellant Novie Miller, and the father of appellant Harry Miller. The divorce decree, rendered September 18, 1922, adjudicated the property rights of the spouses in accordance with an agreement on file providing that certain designated personal property, including that claimed by appellee, belonged to him; that certain other designated personal property belonged to the wife; and that the lands were the wife's separate estate. The husband was awarded the crops and possession and use of the lands until January 1, 1923, when writ of possession should issue in favor of the wife, but the husband was given the right of ingress and egress after that date for the sole purpose of removing any ungathered portion of the 1922 crops. Appellee remained on the lands until January 2, 1923 (January 1st being Sunday), prior to and on which day he removed all his personal property except the separator, Fordson, tractor, and some other articles. He ascribed as his reason for leaving this property that it was not possible for him to remove it earlier. He also took away with him, as he claimed by mistake, certain items of personal property belonging to the wife. He returned to the place about January 4, 1923, with the necessary assistance to remove the separator, Fordson, and tractor, but was met by his son who denied him per-

mission to take the property, ordered him off the place, and told him not to come there again. According to his version, his son told him he could not get the property until he discharged a debt he owed to his son's wife. The son's testimony on this point is detailed in the following quotation:

"I believe I said to papa, 'Don't ever come back on this farm again, unless you bring back the property that has been removed from here, that belongs to my mother;' and that, 'You cannot have what property you have left here, or cannot come and get it—what you say is yours—until you do return what property belongs to my mother.'"

The jury made the following findings: (1, 2, 7 and 8) That defendants converted property of plaintiff worth $142.30; (3, 4, 5, 6, and 14) that defendants withheld from plaintiff the separator, Fordson, and tractor, and the value of their use during the time withheld was $1,720, of which amount $1,000 accrued prior and $720 subsequently to July 17, 1923, the date the property was replevied by defendants; (9, 10, 12, and 13) that plaintiff converted property of defendants worth $99.50.

Special issue 11, to which the jury answered "No," reads:

"Did plaintiff, J. T. H. Miller, agree that the defendant Novie Miller could retain in her possession the personal property of the plaintiff which he left on her lands and premises, when he removed therefrom about January 1, 1923, as security for the return to the defendant, Novie Miller, of her personal property which the plaintiff had removed from said lands and premises and taken into his possession, or until he should pay the value thereof? Answer this question 'Yes' or 'No.'"

Upon these findings the judgment was for plaintiff against defendants for $1,762.80 ($1,720.00+$142.30–$99.50), with 6 per cent. interest thereon from August 15, 1923, and all costs, and against defendants' replevy bond sureties for $720 of this amount, with 6 per cent. interest thereon from no given date.

Appellants have filed 18 assignments of error, 12 of which are briefed under 13 propositions. We will consider the several contentions of appellants without reference to the order or manner in which they are presented in the propositions.

[1] It is contended that the evidence and jury findings conclusively show that appellants were within their rights in retaining the property of appellee, in that appellee wrongfully removed and converted property decreed to Mrs. Miller, and voluntarily left his property on the premises after he had moved off the place and his right to possession thereof had terminated. The contention in this regard is that, from these facts, the law raises an implied lien upon and pledge of appellee's property to secure the return of appellants' property or its value.

Appellants objected to special issue No. 11 because it was misleading, in that it might be construed as submitting the issue of an express contract, whereas the issue was as to a contract "implied in fact." They also tendered a special issue calling for a finding whether plaintiff "impliedly agree(d) that the defendant Novie Miller could retain in her possession" plaintiff's property as security for hers which plaintiff had removed. A special charge was tendered, defining an implied contract as follows:

"An implied contract, in the proper sense, arises where the intention of the parties is not expressed, but an agreement in fact, creating an obligation, is implied or presumed from their acts, or where there are circumstances, which, according to the ordinary course of dealing and the common understanding of men, show a mutual intention to contract. An express contract must be proved by an actual agreement, but in case of an implied contract it will be implied that the party did make such an agreement, as, under the circumstances disclosed, he ought in fairness to have made."

The court's refusal of this issue and charge is assigned as error.

We will consider the foregoing contentions together.

The lien or pledge for which appellants contend must rest upon contract, express or implied, or must come under what is denominated a contract implied in law, or quasi, or constructive contract.

[2, 3] Contracts proper are either express or implied—the only difference between the two classes being in the character of proof required to establish them. The former arise from the oral or written language of the parties. In the latter, the intention of the parties is not expressed in language:

"But an agreement in fact, creating an obligation, is implied or presumed from their acts, or, as it has been otherwise stated, when there are circumstances, which, according to the ordinary course of dealing and the common understanding of men, show a mutual intent to contract." 13 C. J. p. 241.

"Contracts implied in law, or, more properly, quasi or constructive contracts, are a class of obligations which are imposed or created by law without regard to the assent of the party bound, on the ground that they are dictated by reason and justice, and which are allowed to be enforced by an action ex contractu. They rest solely on a legal fiction, and are not contract obligations at all in the true sense, for there is no agreement; but they are clothed with the semblance of contract for the purpose of the remedy, and the obligation arises not from consent, as in the case of true contracts, but from the law or natural equity." 13 C. J. p. 244.

We also refer in this connection to the American Law Institute's Restatement No. 1 of the Law of Contracts, sections 5, 21, and 70, and to section 5 of Treatise 1 (a) to that Restatement.

[4] Manifestly, the issue and charge ten-

·dered presented only the question of an agreement or meeting of the minds of the parties, deducible from their conduct and the attendant circumstances, and not that of a quasi or constructive contract. To sustain such finding, the conduct and circumstances in proof must be such as to warrant the inference of a mutual intention to contract or agree. We find nothing in the evidence to warrant such inference. Plaintiff left his property on the premises because he found it impractical or inconvenient to remove it earlier, intending to return and get it. He did so return in two days, when he was ordered off the place and told not to come back, and that he could not get his property until he had returned or accounted for that of his wife. His assent to its retention by defendant cannot reasonably be inferred from these facts. The evidence not only fails to warrant an affirmative inference of his assent to its retention, but negatives such inference.

Nor do we find warrant in the evidence of an "implied in law, quasi or constructive contract," creating a pledge of or lien upon the property. The facts presented do not fall within any of the classes of transactions out of which the law raises or from which it imports such contracts. Appellants' contention in this regard is predicated upon the facts that appellee took property which did not belong to him, and for which he was, in law, held to account, and voluntarily left upon the premises, after his right of possession had terminated, property of his own. These facts alone do not create a lien upon or pledge of his own property. True, he was in duty and in law bound to return his wife's property or account for its value. But that fact created no lien upon or pledge of his own property coming into his wife's possession, unless the attendant circumstances were such as to imply his assent to the claim of lien or pledge. While we have been cited to many cases by appellants, none of them sustains the contentions they make.

The above holdings dispose of propositions 1 to 5 and 9 to 12, inclusive.

Propositions 6, 7, and 8 complain of the issues submitting the value of the use of the separator, Fordson, and tractor during the time they were held by defendants, on the following grounds: (1) Because there was no evidence that the property did not have a rental value. (2) Because there was no allegation, finding, or evidence of notice of special damages.

[5] While there was some testimony relative to rental value of the property, we doubt its sufficiency to support a finding thereof. The evidence was clearly sufficient to warrant a finding that there was no rental value or market value for the use of the property in the community, and therefore authorized submission of the issue of actual value of use. In the absence of a request for a finding whether there was a market value for use or rental value in the community, appellants' complaint in this regard is without merit.

With reference to the second ground of complaint, appellee pleads:

"That during all of said time this plaintiff was a farmer, and during the season for threshing grain, which is during the months of June, July, and August, he followed the business and occupation of threshing grain, and had purchased and owned, and during the preceding years had used, said separator and one of said tractors with much profit for the purpose of threshing grain, and intended and expected to continue to use same for that purpose, during the summer and threshing season of the year, 1923—all of which facts, and which purposes were well known to defendants during the entire time that they withheld and detained said separator and tractor from him."

The evidence amply supports this pleading.

We sustain the thirteenth proposition complaining of that portion of the judgment awarding interest on the $1,762.80 from August 15, 1923, on the ground that there was no jury finding of interest. Davis v. Morris (Tex. Civ. App.) 257 S. W. 328; Id. (Tex. Com. App.) 272 S. W. 1103; Williams v. Walker (Tex. Civ. App.) 290 S. W. 299.

This error was not called to the trial court's attention, and, while treating it as fundamental and correcting the judgment, the costs of appeal will not be taxed against appellee. Merryman v. First Nat. Bank (Tex. Civ. App.) 288 S. W. 840; Williams v. Walker, above.

The trial court's judgment is reformed so as to allow interest on the sum recovered by appellee from the date of the trial court's judgment, and, as so reformed, it is affirmed. All costs of appeal are taxed against appellants.

Reformed and affirmed.

### On Motion for Rehearing by Appellee.

[6] Our attention is called to the case of Ewing v. Foley, Inc., 115 Tex. 222, 280 S. W. 499, 44 A. L. R. 627, which, in effect, overrules the holding in Davis v. Morris, and earlier cases to the same effect followed by us in our original opinion. Appellee's motion is granted; our former judgment, in so far as it sustains appellants' thirteenth proposition and modifies the trial court's judgment, is set aside; and the trial court's judgment is affirmed in toto.

Motion granted.